Jeffrey J. MILLER and all others
similarly situated, Plaintiffs,

v.

UNITED STATES PAROLE COMM'N,
et al. Defendants.

No. 02–4073–JAR.

United States District Court,
D. Kansas.

April 15, 2003.

Marc A. Schultz, Topeka, KS, for Plaintiff.

D. Brad Bailey, Office of United States Attorney, Topeka, KS, for Defendant.

## ORDER DENYING PLAINTIFF'S MO-TION FOR PERMANENT INJUNC-TION AND DISMISSING ACTION

ROBINSON, District Judge.

Plaintiff filed a complaint (Doc. 1) seeking to enjoin the Defendants from obtaining his DNA sample in compliance with 42 U.S.C. § 14135a, for inclusion in the Federal Bureau of Investigation's Combined DNA Index System ("CODIS") database. On May 15, 2002, this Court granted a Temporary Restraining Order (Doc. 5) in favor of the Plaintiff. On June 5, 2002, Plaintiff submitted a memorandum seeking permanent injunction (Doc. 6). The magistrate judge entered an ordering staying the matter pending a judgment on the merits of the complaint (Doc. 9). Because the Court concludes that the Patriot Act is constitutional, the Court denies Plaintiff's motion for a preliminary injunction and dismisses Plaintiff's Complaint.

### I. Background

Plaintiff brings this challenge while under the jurisdiction of the United States Parole Commission. Plaintiff was convicted of Kidnaping and Carjacking and sentenced to 20 years in prison on August 6, 1986. While Plaintiff was incarcerated, the parole system became extinct. With the implementation of the sentencing guidelines, federal prisoners no longer become eligible for parole. Prisoners serve out the sentence handed down by the court and then are placed on supervised release for a pre-determined amount of time. Plaintiff, and others convicted under the old system, are still released on discretionary parole. The Parole Commission still exists to monitor these individuals and the statutes, while repealed, remain in force as applied to those individuals. Plaintiff was released on parole in 1997, revoked and returned to prison in 1999 and re-released in 2000. Plaintiff's parole continues until March 26, 2006.

Two years before Plaintiff was convicted, Congress passed the Comprehensive Crime Control Act of 1994, which required that persons convicted of murder or sex offenses under federal and military law provide a DNA[1] sample to be included in the Combined DNA Index System ("CODIS"), a national database. The database allows federal and state law enforcement officers to check evidence found at crime scenes of both past and future crimes, against offenders who have provided a sample. Nearly every state has a similar statute and samples collected by state entities are also included in CODIS.

Courts have reviewed a number of DNA collection statutes, and found them to not be penal in nature. Most recently, the Kansas Supreme Court found that its DNA collection law did not constitute a penalty but rather established a process for assisting the identification and detection of crimes.[2] That court held that "[s]tate action in furtherance of achieving those goals is not a penalty or a punishment."[3] Other courts have held the same.[4]

---

1. DNA stands for deoxyribonucleic acid, which is the identifying genetic marker, unique to each human being, save identical twins.

2. *State v. Maass,* 275 Kan. 328, 64 P.3d 382, 385 (2003).

3. *Id.*

4. *See Vanderlinden,* 874 F.Supp. 1210 ("[T]he statute is not punitive but futhers a governmental interest in law enforcement, it follows that the statute does not violate ex post facto principles."); *Reynard,* 220 F.Supp.2d 1142 (holding that DNA Analysis Backlog Elimination Act of 2002 does not violate the ex post facto clause when applied to conviction prior to the Act); *Rise v. Oregon,* 59 F.3d 1556 (9th Cir.1995).

In 2001, the law was amended by the passage of the USA Patriot Act. The Patriot Act extended the DNA sample requirement to other qualifying federal and military felonies, including Kidnaping. Thus, while Plaintiff was on parole, his parole officer advised him that the conditions of his parole now required him to provide a sample of his DNA for inclusion in the database. In addition to adding other qualifying felonies, the Patriot Act also made it a misdemeanor for persons convicted of qualifying felonies to fail to provide a DNA sample. Plaintiff refused to give a sample and filed this lawsuit.

## II. Discussion

Plaintiff alleges that the relevant provisions of the Patriot Act and the Comprehensive Crime Control Act of 1994 are a violation of his rights under the Fourth Amendment, an unconstitutional taking without due process, a violation of his right to privacy and violative of the ex post facto clause of the Constitution. Plaintiff also seeks to have this action certified as a class action. Each of Plaintiff's claims will be addressed in turn.

### A. Due Process

■ In his complaint, Plaintiff alleges that requiring him to give a sample of his DNA for the database is an unconstitutional taking without due process. While this argument appears to be abandoned in Plaintiff's briefs, the Court will nevertheless give it full attention. The Tenth Circuit addressed this argument in *Boling v. Romer.*[5] In *Boling*, the plaintiff challenged a Colorado statute requiring all inmates convicted of sexual offenses to provide a blood sample before their release from prison. The *Boling* court found that no hearing was necessary before taking a blood sample.[6] The court reasoned that there would be little to contest in the way of due process when the only requirement for giving a sample was conviction of a predicate offense.[7] Additionally, even if Plaintiff's challenge is to the enactment of the law, rather than the method of the blood draw, his argument fails. When legislation affects a general class, the legislative process satisfies due process requirements.[8]

■ Furthermore, revocation of Plaintiff's parole for not providing a sample is not an unconstitutional taking without due process, because Plaintiff does not have a liberty interest in parole.[9] Under the parole guidelines, he was eligible for parole after serving one-third of his sentence,[10] but the determination to grant parole was at the discretion of the parole board. Plaintiff received a 20 year sentence for his crimes. At the discretion of the parole board, he was paroled after 11 years and six months, with the understanding that he would abide by all conditions of parole. Plaintiff's sentence of imprisonment does not expire until March of 2006. Because he has no constitutional liberty interest in early release, and the federal parole sys-

---

**5.** 101 F.3d 1336 (10th Cir.1996).

**6.** *Id.* at 1341.

**7.** *Id.*

**8.** *Vanderlinden v. Kansas, et al.*, 874 F.Supp. 1210, 1216 (D.Kan.1995) (holding that procedural due process was satisfied when the Kansas legislature passed the law requiring persons convicted of certain offenses to provide DNA samples).

**9.** *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (stating that prisoners do not have a constitutional or inherent right to early release, unless granted by statute or otherwise).

**10.** 18 U.S.C. § 4201 et seq (repealed Nov. 1, 1987 but extended for crimes committed prior to repeal).

tem only granted discretionary release, Plaintiff cannot claim an unconstitutional taking of a right to early release.

## B. Ex Post Facto Clause

Plaintiff makes two arguments under the ex post facto clause. First, he argues that because the Patriot Act, which brought the crime of Kidnaping under the purview of the statute, was not enacted until 2001, 15 years after his conviction of Kidnaping, it violates the prohibition of ex post facto punishment. Second, Plaintiff argues that because refusing to comply with the law subjects him to punishment for a separate, misdemeanor offense, the ex post facto clause is implicated.

The ex post facto clause merely states that "[n]o State shall ... pass any ... ex post facto Law." [11] The definition of an ex post facto law was set out in 1789 by Justice Chase:

> 1d. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.2d. Every law that aggravates a crime, or makes it greater than it was, when committed.3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.[12]

 The purpose of the ex post facto clause is "to assure that legislative Acts give fair warning of the effect and permit individuals to rely on their meaning until explicitly changed." [13] Despite some interpretations of Justice Chase's definition, the change must do more than merely disadvantage a defendant.[14] It must be one of substance and not merely procedural.[15]

### 1. Greater Punishment

Plaintiff argues that this law implicates the ex post facto clause by inflicting a greater punishment for his conviction of Kidnaping than the punishment he faced at the time he committed the crime. Plaintiff argues that the punishment is unconstitutionally increased by making it a condition of his parole that he give a sample. As with any condition of his parole, failure to abide by the condition subjects Plaintiff to revocation and re-incarceration.

 But, it is well settled that the conditions of parole can be changed at any time. This condition, mandating the giving of a DNA sample, is not itself penal in nature. Thus, it cannot be ex post facto.[16] The mere fact that failure to comply with this condition subjects Plaintiff to revocation, does not implicate the ex post facto clause. "Revocation of parole is not a punishment for a new offense ... [f]or revocation purposes, the conduct simply triggers the execution of the conditions of the original sentence." [17]

**11.** Art. I, § 10, cl. 1.

**12.** *Calder v. Bull,* 3 (Dall.) 386, 390, 1 L.Ed. 648 (1798) (seriatim opinion of Chase, J.).

**13.** *United States v. Reese,* 71 F.3d 582, 585 (6th Cir.1995) (quoting *Weaver v. Graham,* 450 U.S. 24, 28–29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)).

**14.** *Collins v. Youngblood,* 497 U.S. 37, 45, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (quoting

*Kring v. Missouri,* 107 U.S. 221, 228, 2 S.Ct. 443, 27 L.Ed. 506 (1883)).

**15.** *Id.* at 44–45, 110 S.Ct. 2715.

**16.** *Jones v. Murray,* 962 F.2d 302, 309 (4th Cir.1992).

**17.** *Reese,* 71 F.3d at 586 (quoting *United States v. Paskow,* 11 F.3d 873, 876 (9th Cir. 1993)).

In *United States v. Reese*,[18] the court thoroughly examined the ex post facto ramifications of a change in the sentencing options available to the court upon revocation for a violation of a condition of supervised release. In *Reese* the defendant pled guilty to a drug offense. At the time of the sentencing, the court had the discretion to decide what prison term would ensue should the defendant ever be found using or possessing drugs during his period of supervised release.

After the defendant was sentenced to a term of imprisonment and a period of supervised release, a new statute was enacted. This new statute diminished the court's discretion in sentencing upon a revocation of supervised release, by establishing a minimum mandatory sentence of one third of the total supervised release time for anyone found possessing or using drugs on supervised release. Thus, when the defendant was revoked for testing positive for drug use, the court sentenced the defendant to the minimum mandatory term of imprisonment. The defendant appealed, arguing that the change violated the ex post facto clause and that if the judge would have had discretion, he may have received a shorter sentence for his supervised release violation.

In analyzing the defendant's arguments, the court found that it "must decide whether revocation should be considered the continuing legal consequence of Defendant's original crimes, or viewed instead as the independent legal consequence of Defendant's later parole misconduct."[19] The court found that the answer to the question was "both"[20] because, but for the original offense, there would have been no punishment on parole; however, but for the current offense of using drugs on parole, there would have been no revocation.[21]

The court then looked at who was affected by the change in the law. If the entire group of offenders convicted of the defendant's crime was affected, then the change would clearly violate the ex post facto clause. But if the change does not have this all inclusive affect, and requires the commission of a new offense, the court must determine whether the law satisfies the key purpose of the ex post facto clause: "Is there fair notice, and is the punishment for the original conduct being imposed or increased?"[22] The court answered,

> When couched in those terms, it is much clearer that there is no ex post facto violation here. A person on supervised release, situated identically to Reese, who did not repeatedly test positive for drugs would have suffered no ill consequences from the passage of the new law ... [w]hen the punishment at issue here does not reach an identically situated prisoner who committed the same earlier conduct, it can hardly be logically argued that the punishment is being imposed "because of" the earlier conduct.[23]

This reasoning logically extends to Plaintiff's challenge of the Patriot Act. The Patriot Act has no all inclusive effect on those convicted of Kidnaping or other qualifying felonies. It affects only those who refuse to give a DNA sample. While the original conviction of Kidnaping is necessary to bring Plaintiff under the purview of the statute, it is his new conduct, his failure to provide a DNA sample, that is criminalized. A person convicted of Kidnaping prior to 2001, placed on parole, who

18. *Id.*

19. *Id.* at 588.

20. *Id.*

21. *Id.*

22. *Id.* at 590.

23. *Id.* at 590.

provides a sample, will not suffer any ill consequences from this law.

Moreover, the Patriot Act does not contravene the ex post facto clause's concerns for fair notice and no increase in punishment based on the conduct underlying the original conviction. With respect to fair notice, although the requirement that he provide a DNA sample did not exist at the time he committed the crime of Kidnaping, the fair notice requirement of the ex post facto clause has no broad application in the context of conditions of prisoners and parolees.

The *Jones* [24] court discussed a change in prison regulations requiring a blood sample for the database. The court found that the ex post facto clause does not prevent a prison from changing regulations or the punishment for violating those regulations. The court reasoned that with every conviction, a prisoner can expect numerous regulations and punishment for not complying.[25] The same is true for a person on parole. Plaintiff should have anticipated numerous conditions of parole and that if he failed to abide by those conditions, he could be revoked.

Nor does the Patriot Act contravene the concern underlying the ex post facto clause that a later enacted law not increase punishment based on earlier conduct in the commission of an offense. The *Jones* court held that requiring a DNA sample of all prisoners, regardless of their date of conviction, was a requirement that was not even penal in nature.[26] And, the ex post facto analysis of other statutes is instructive in this Court's determination of wheth-

er the Patriot Act effects an increase in punishment based on Plaintiff's conduct in committing the crime of Kidnaping.

Instructive is the court's analysis in *United States v. Ykema*,[27] where the court found no ex post facto violation in a change in the federal sentencing guidelines that increased Ykema's offense level. By virtue of this change in the sentencing guidelines, Ykema's new conviction was considered a repeat offense based on his prior criminal history, subjecting Ykema to a higher offense level and a longer term of imprisonment. In rejecting *Ykema's* ex post facto challenge, the court reasoned that "the heavier penalty for the offense is not an additional punishment for the earlier behavior but is a statutorily authorized punishment for criminal conduct that has occurred after the passage of the law."[28]

### 2. New Offense

Plaintiff further argues that the Patriot Act violates the ex post facto law because it creates a new criminal offense, based on his conviction of Kidnaping, for his failure to provide a DNA sample. When Plaintiff committed the crime of Kidnaping, he was not subject to prosecution and conviction for failing to provide a DNA sample. The penalty of a new misdemeanor charge is much different than a change in the conditions of parole. A change in parole conditions could only subject plaintiff to a revocation and having to serve the maximum time of his 20 year sentence; however, a new misdemeanor could extend plaintiff's punishment beyond his 20 year sentence.

■ Yet, *Reese* [29] is further instructive

---

**24.** *Jones,* 962 F.2d at 309.

**25.** *Id.*

**26.** *Id. See also United States v. Reynard,* 220 F.Supp.2d 1142 (S.D.Cal.2002) ("[C]onditions of supervised release have not historically been regarded as punishment, but instead as

a means to further the deterrent, protective, and rehabilitative goals of sentencing.").

**27.** 887 F.2d 697 (6th Cir.1989).

**28.** *Id.* at 700.

**29.** *Reese,* 71 F.3d at 586 (quoting *Paskow,* 11 F.3d at 876).

on the parameters of the ex post facto clause as applied to a law that potentially subjects those convicted of certain crimes or classes of crimes to a newly created criminal offense. The Court first considers whether the law violates the ex post facto clause with an all inclusive effect on the entire group of offenders. The Patriot Act does not. It does not apply to all offenders convicted of qualifying felonies; it only applies to such offenders who fail to provide a DNA sample. And the Patriot Act, while creating a new offense for failure to provide a DNA sample, does not run afoul of the ex post facto clause, for the same reasons that the sex offender registry laws have not.

Just as the Patriot Act makes failure to provide a DNA sample a separate misdemeanor offense, the sex offender registry laws not only make registering a condition of release, they also create a separate misdemeanor offense for failure to register. In *Russell v. Gregoire,*[30] the Ninth Circuit found no ex post facto violation in the new crime imposed on an offender, convicted prior to the passage of the sex offender registry act, who fails to register. The fact that the required predicate offense predates the change in the law, does not make the law unconstitutional.

> We emphasize that the crime of failing to register under the Act constitutes a separate offense. The fact that a prior conviction for sexual misconduct is an element of the "failure to register" offense is of no consequence. It is hornbook law that no ex post facto problem occurs when the legislature creates a new offense that includes a prior convic-

tion as an element of the offense, as long as the other relevant conduct took place after the law was passed.[31]

The same logic prevails here. While a prior conviction for a qualifying offense is an element of the new crime of failing to give a DNA sample, it is the conduct of failing to give the sample that triggers the new charge and punishment. Thus, it cannot be said that the statute is unconstitutional.[32]

### C. Fourth Amendment and Privacy Interest Challenges

Plaintiff also alleges in his complaint, yet appears to abandon in his briefing, that taking a DNA sample violates his right to privacy. While the right to privacy is not specifically enumerated in the Constitution, it has been recognized as a valid constitutional right in some circumstances.[33] Generally, this broad assertion falls under the rubric of the Fourteenth Amendment; however, plaintiff links his privacy interest in his identity to the Fourth Amendment.

But Plaintiff cannot claim a privacy interest in his identity. Plaintiff's status as both a parolee and a convicted felon negate any privacy interest he has in his identity. As the Fourth Circuit explained in *Jones,*[34]

> With the person's loss of liberty upon arrest comes the loss of at least some, if not all, rights to personal privacy otherwise protected by the Fourth Amendment. Thus, persons lawfully arrested on probable cause and detained lose a right of privacy from routine searches ... as do felons ... [e]ven probationers

---

**30.** 124 F.3d 1079 (9th Cir.1997).

**31.** *Id.* at 1088–89.

**32.** The issue of whether the prison may force the plaintiff to give a sample is not before this court and will not be addressed.

**33.** *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984); *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

**34.** 962 F.2d 302.

lose the protection of the Fourth Amendment with respect to their right to privacy against searches of their homes pursuant to an established program to ensure rehabilitation and security . . . .

Similarly, when a suspect is arrested on probable cause, his identification becomes a matter of state interest and he can hardly claim privacy in it. We accept this proposition because the identification of suspects is relevant not only to solving the crime for which the suspect is arrested, but also for maintaining a permanent record to solve other past and future crimes. This becomes readily apparent when we consider the universal approbation of booking procedures that are followed for every suspect arrested for a felony, whether or not the proof of a particular suspect's crime will involve the use of fingerprint identification . . . .

While we do not accept even this small level of intrusion for free person without Fourth Amendment constraint, the same protections do not hold true for those lawfully confined to the custody of the state.[35]

Although Plaintiff argues that he was no longer confined, but was released for reintegration into society, that is not a fully accurate statement. As a parolee, he remains under the jurisdiction and supervision of the U.S. Parole Commission. He is not on the same footing as a free citizen. His rights are diminished in several respects, including having no privacy right in his identity. Plaintiff was sentenced to 20 years in prison and was released on *discretionary* parole. His sentence is not complete until 2006, whether he completes it on parole or in prison. Under either scenario, he is not a free man subject to the same privacy rights that a free citizen without a felony conviction and not currently on parole could assert.

 Plaintiff's Fourth Amendment challenge to DNA collection is not novel. It is without doubt that the taking of a blood sample is a search as defined by the Fourth Amendment.[36] Nearly all courts have found DNA collection statutes to be reasonable searches under the Fourth Amendment and thus, constitutional; however, precedent is not consistent in the analysis used to justify this conclusion. A recent decision from the Southern District of New York discussed the different legal analyses used by courts and how those now work together in light of recent Supreme Court decisions.

In *Nicholas v. Goord*,[37] the court was presented with a challenge to the New York state law requiring DNA samples from certain categories of convicted felons.[38] The *Nicholas* court recognized that some courts had used the traditional balancing test under the Fourth Amendment[39] in analyzing DNA statute chal-

---

35. *Id.* at 306.

36. *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (finding a blood draw for drug testing a search under the Fourth Amendment, but reasonable under the circumstances enunciated).

37. 2003 WL 256774 (S.D.N.Y. Feb. 6, 2003).

38. The New York Statute is substantially similar to the federal statute on DNA collection and any distinctions are not included in the analysis of this case.

39. *See Maass,* 275 Kan. 328, 64 P.3d 382; *Boling,* 101 F.3d at 1340; *Rise,* 59 F.3d 1556; *Jones,* 962 F.2d at 307–08; *Kruger v. Erickson,* 875 F.Supp. 583, 588–89 (D.Minn.1995), aff'd on other grounds, 77 F.3d 1071 (8th Cir. 1996); *Sanders v. Coman,* 864 F.Supp. 496, 499 (E.D.N.C.1994); *Ryncarz v. Eikenberry,* 824 F.Supp. 1493, 1498–99 (E.D.Wash.1993); *Gaines v. Nevada,* 116 Nev. 359, 998 P.2d 166, 171–72 (2000), cert. denied, 531 U.S. 856, 121 S.Ct. 138, 148 L.Ed.2d 90 (2000); *Johnson v. Commonwealth,* 259 Va. 654, 529 S.E.2d 769, 779 (2000), cert. denied, 531 U.S. 981, 121 S.Ct. 432, 148 L.Ed.2d 439 (2000);

lenges, even rejecting the "special needs" [40] analysis, while others relied exclusively on the "special needs" [41] doctrine. [42] The *Nicholas* court acknowledged that the Supreme Court's recent decisions in *City of Indianapolis v. Edmond* [43] and *Ferguson v. City of Charleston* [44] discussed the "special needs" doctrine and thus affect subsequent analysis of the same in a DNA challenge. *Edmond* declared unconstitutional highway checkpoints for narcotics where no individualized suspicion exists. [45] And *Ferguson* held unconstitutional drug testing for all mothers who have preterm labor or do not receive prenatal care. [46]

*Edmond* and *Ferguson* seem to make inappropriate the direct application of a Fourth Amendment balancing test in determining a DNA challenge where no individualized suspicion is present. [47] And, these decisions also focus the "special needs" analysis on the "primary purpose" of the statute. [48] Only once the special needs analysis is completed, should a court then look to the traditional balancing test of the Fourth Amendment. Therefore, agreeing with the *Nicholas* court's interpretation in light of *Edmond* and *Ferguson*, this Court will first evaluate the DNA statute under the special needs doctrine.

The Supreme Court first developed the special needs analysis in *New Jersey v. T.L.O.* [49] Justice Blackmun's opinion in *T.L.O.* stated that a balancing test under the first amendment should only be used when "exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." [50] Cases focusing on the Fourth Amendment issues again referred to the special needs analysis and eventually boiled down the question asked in such instances to whether a "special governmental need beyond the normal need for criminal enforcement" exists. [51] For in-

---

*Landry v. Attorney General,* 429 Mass. 336, 709 N.E.2d 1085, 1091–92 (1999), cert. denied, 528 U.S. 1073, 120 S.Ct. 785, 145 L.Ed.2d 663 (2000); *Doles v. State,* 994 P.2d 315, 318–19 (Wyo.1999); *Dial v. Vaughn,* 733 A.2d 1, 6–7 (Pa.Cmwlth.Ct.1999); *Cooper v. Gammon,* 943 S.W.2d 699, 704–05 (Mo.Ct. App.1997); *People v. Wealer,* 264 Ill.App.3d 6, 201 Ill.Dec. 697, 636 N.E.2d 1129, 1135 (1994); *State ex rel. Juvenile Dep't of Multnomah County v. Orozco,* 129 Or.App. 148, 878 P.2d 432, 435–36 (1994).

**40.** *Jones,* 962 F.2d at 307 n. 2; *Gaines,* 998 P.2d at 171–72; *Landry,* 709 N.E.2d at 1092; *Doles,* 994 P.2d at 318–19; *Wealer,* 201 Ill. Dec. 697, 636 N.E.2d at 1135.

**41.** *Roe v. Marcotte,* 193 F.3d 72, 79–82 (2d Cir.1999); *Shelton v. Gudmanson,* 934 F.Supp. 1048, 1050–51 (W.D.Wis.1996); *State v. Olivas,* 122 Wash.2d 73, 856 P.2d 1076, 1086 (Wa.1993).

**42.** The "special needs" doctrine is well established in the plethora of case law involving the Fourth Amendment and will be fully set out later in the opinion.

**43.** 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000).

**44.** 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001).

**45.** *Edmond* 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333.

**46.** *Ferguson,* 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205.

**47.** *Nicholas,* 2003 Wl 256774 at *11.

**48.** *Id.*

**49.** 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (allowing a search in a school based on less than probable cause because of the special needs associated with the environment).

**50.** *Id.* at 351, 105 S.Ct. 733 (J. Blackmun, concurring).

**51.** *National Treas. Employees Union v. Von Raab,* 489 U.S. 656, 665, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989).

stance, *Griffin v. Wisconsin* [52] held that supervising persons on probation was a "special need" that permitted privacy infringements that would not be tolerated if applied to society at large. [53]

▆ This Court must determine whether the federal DNA collection statute serves a special need, beyond ordinary law enforcement. In doing so, the Court must first determine the primary purpose of the statute. The statute serves two purposes. One obvious purpose is to solve future and past crimes by the use of DNA analysis. This is clearly a law enforcement purpose. A second purpose is to deter offenders who commit crimes with a high rate of recidivism.

Given that the primary purpose of the statute is solving past and future crimes, there is no question that its primary purpose is one of law enforcement. However, the analysis does not end there. For it is not every law enforcement purpose that would render the statute unconstitutional. If the law enforcement purpose targeted is one that goes beyond ordinary law enforcement needs, then the statute falls into the special needs exception. [54]

The analysis in *Nicholas* is instructive on this question. The DNA collection statute is not targeted at investigating a particular or specific crime. [55] Rather, it creates a database for solving crimes that have not yet occurred or crimes that have occurred but are not specifically being looked at when taking any one individual's blood sample. Thus, the primary purpose is not investigating "some specific wrong-

doing." [56] This makes the statute beyond the ordinary law enforcement need. [57]

One court decided this question differently post *Edmond* and *Ferguson;* however, that decision's reasoning is not persuasive to this Court. In *United States v. Miles* [58] the Eastern District of California held that the DNA collection provision of the Patriot Act is unconstitutional, finding that prior decisions on the constitutionality of these statutes were essentially overturned by *Edmond* and *Ferguson.* In *Edmond* and in *Ferguson,* the Supreme Court determined that the highway check point statute and the pregnancy drug testing statute were applied where no individualized suspicion existed, and had no purpose other than the ordinary law enforcement needs. The *Miles* court found that the DNA collection provision of the Patriot Act similarly satisfied no need beyond ordinary law enforcement, and was not based on individualized suspicion, and thus amounted to an impermissible general law enforcement search. *Miles* cited as a distinction without a difference that the persons affected in *Ferguson* and *Edmond* were free citizens and the persons affected by the DNA collection statute were convicted felons, in prison, on parole or on supervised release.

This Court finds this to be a distinction *with* a difference. Plaintiff is under the supervision of the Parole Commission and is still serving, albeit on parole, the remainder of a 20 year sentence. He is not a free citizen and in a considerably different position than the pregnant women or random motorists affected by the statutes at

---

**52.** 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).

**53.** *Id.* at 875, 107 S.Ct. 3164.

**54.** *Michigan Dep't of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990).

**55.** *Nicholas,* 2003 WL 256774 at *13.

**56.** *Id.* at *13.

**57.** *Id. See also Shelton,* 934 F.Supp. at 1051.

**58.** 228 F.Supp.2d 1130 (E.D.Cal.2002).

issue in *Ferguson* and *Edmond.* As explained above in the discussion of due process, Plaintiff's privacy interests are diminished, and as a felon on parole for a Kidnaping conviction, he is not entitled to the same consideration as a free citizen without such criminal history and status.

Furthermore, the facts in *Miles* are distinguishable from the facts in this case. In *Miles,* the offender was on supervised release for a non-qualifying offense. However, 30 years earlier he had been convicted of a crime covered by the statute. To that, the *Miles* court said:

> Unlike defendant, the petitioners in *Rise* were under supervision for their qualifying offenses. Thus, they had more reason to expect that while they were under supervision they would be required to comply with conditions related to their qualifying offenses. Here, by contrast, there is no connection between defendant's current supervised release and his 1974 conviction for the qualifying offense.
>
> The court cannot accept the government's argument that defendant's expectation of privacy was obliterated forever when he was convicted of a qualifying offense thirty years ago. Having fully served his sentence for that crime, defendant had an objectively reasonable expectation that after three decades the government would not be able to use that offense as a justification for invading his bodily integrity and obtaining his identifying information without some individualized suspicion of criminal wrongdoing.[59]

This Court is not presented with whether someone in *Miles'* position is unconstitutionally searched by the DNA collection act. But, as to Plaintiff, his expectation of privacy is ill founded. He is still serving his sentence for the qualifying offense, Kidnaping. And, he could have no reasonable expectation that the conditions of his parole would not be changed for some reason relating to the nature of the crime of conviction for which he is currently under supervision. His current supervision and his qualifying offense are intimately connected.

*Ferguson* and *Edmond* may change the way in which DNA collection challenges are analyzed, but they do not necessarily impose a requirement of individualized suspicion in cases where the special needs exception applies. The Patriot Act meets the special needs exception; the statutes reviewed in *Ferguson* and *Edmond* did not.

■ Having first analyzed the applicability of the special needs exception, and having determined that the Patriot Act provision for DNA collection falls within that exception, the court next turns to the traditional Fourth Amendment balancing test, as *Ferguson* and *Edmond* direct. Even where a special need is present, the search must still be reasonable, under the circumstances. In Plaintiff's case, the governmental interests of identifying both victims and perpetrators of future and past crimes is weighed against the intrusion into plaintiff's privacy interests.[60]

■ The intrusion of a DNA test is minimal.[61] As discussed above, Plaintiff's privacy interest in his identity is severely diminished both by his status as a convicted felon as well as his status as a parolee. Plaintiff alleges that his privacy is invaded because the DNA sample could be used for purposes other than identification. He contends that the scope of the use of his DNA with future technology is unknown,

---

**59.** *Id.* at 1138.

**60.** *Nicholas,* 2003 WL 256774 at *15–16.

**61.** *Skinner,* 489 U.S. at 624–26, 109 S.Ct. 1402.

and that current technology would allow the government to discover, among other things, his race, gender, genetic predispositions or infirmities. Plaintiff's assertions are merely speculative.

The DNA sample is used solely to provide identification information and that purpose, and no other, is articulated in 42 U.S.C. § 14135e. DNA identification is often likened to a fingerprint. While some differences exist, they are both identity markers. DNA is more conclusive and can practically guarantee a 100% certain identity, except in cases of identical twins. Unless plaintiff can actually show that the government is using the sample for some ulterior purpose, there is no justiciable controversy.[62]

### D. Class Certification

Finally, Plaintiff requests that his action be certified as a class action under Fed. R.Civ.P. 23. Plaintiff identifies no other individuals in this court, or elsewhere, to include in his class. Instead, plaintiff asserts that it would be easier for the government to find and name the class members. Unfortunately, it is the plaintiff who requests class certification and thus it is his burden to prove the elements necessary to meet the requirements of Rule 23.[63] Additionally, it cannot be accurately said that the members similarly situated as plaintiff are numerous. Plaintiff is in a unique position in that he was sentenced under the parole system, which no longer exists. His claims may be different than those of convicted felons on supervised release, probation, currently incarcerated or those who have completely finished all provisions of their sentence. Plaintiff's request is denied.

IT IS THEREFORE ORDERED that plaintiff's request for a permanent injunction is denied and his complaint is dismissed on the merits.

**IT IS SO ORDERED.**

---

**62.** *Boling,* 101 F.3d at 1341 (citing *In re Welfare of Z.P.B.,* 474 N.W.2d 651, 653–54 (Minn. Ct.App.1991)).

**63.** *In re Aluminum Phosphide Antitrust Litigation,* 160 F.R.D. 609 (D.Kan.1995) (holding that it is the burden of the party seeking certification to present evidence of each element necessary for class certification).