**UNITED STATES of America**

v.

**John STEGMAN**

**No. CR. CCB–97–0126.**

United States District Court, D. Maryland.

Nov. 24, 2003.

---

Lynne A Battaglia, Court of Appeals of Maryland, Tarra DeShields Minnis, Office of U.S. Atty., Baltimore, MD, for U.S.

## MEMORANDUM

BLAKE, District Judge.

The defendant, John Stegman, began serving a term of supervised release on September 21, 2001. In March 2002, Stegman refused to comply with an order from his probation officer to submit a blood specimen pursuant to the DNA Analysis Backlog Elimination Act of 2000, 42 U.S.C. § 14135 *et seq.* ("DNA Act" or the "Act"). Stegman now challenges the constitutionality of the DNA Act in a motion to dismiss a notice of violation of conditions of supervised release filed by his probation officer. For the reasons stated below, Stegman's motion will be denied.

## BACKGROUND

On December 19, 2000, Congress enacted the DNA Act. The Act provides in relevant part: "[t]he probation office responsible for the supervision under Federal law of an individual on probation, parole, or supervised release shall collect a DNA sample from each such individual who is, or has been, convicted of a qualifying Federal offense . . . ." 42 U.S.C. § 14135a(a)(2).[1] Qualifying Federal offenses include homicide, crimes relating to sexual abuse or sexual exploitation, kidnapping, and offenses involving robbery or burglary. *Id.* § 14135a(d). The DNA Act

further requires cooperation in the collection of a DNA sample as a condition of probation, parole, or supervised release, *id.* § 14135c, and provides that failure to cooperate is a misdemeanor offense, *id.* § 14135a(a)(5). Additionally, the DNA Act authorizes the probation office responsible for supervision of an individual to "use or authorize the use of such means as are reasonably necessary to detain, restrain, and collect a DNA sample from an individual who refuses to cooperate in the collection of the sample." *Id.* § 14135a(a)(4)(A).

Once a DNA sample is collected, the Act requires the responsible probation office to furnish each DNA sample to the Federal Bureau of Investigation for analysis and inclusion in the Combined DNA Index System ("CODIS"). *Id.* § 14135a(b). "CODIS is a national index of DNA samples taken from convicted offenders, crime scenes and victims of crime, and unidentified human remains that 'enables law enforcement officials to link DNA evidence found at a crime scene with a suspect whose DNA is already on file.' " *United States v. Miles,* 228 F.Supp.2d 1130, 1132 (E.D.Cal.2002) (quoting 146 Cong. Rec. S11645–02, S11647 (Dec. 6, 2000) (statement of Sen. Kohl)); *see also* 42 U.S.C. § 14132(a) (authorizing the Federal Bureau of Investigation to establish CODIS). Moreover, the DNA Act authorizes disclosure of a DNA sample or result "to criminal justice agencies for law enforcement identification purposes," "in judicial proceedings," "for criminal defense purposes, to a defendant . . . in connection with the case in which such defendant is charged," and "if personally identifiable information is removed, for a population statistics database, for identification research and protocol development purposes, or for quality

---

1. The DNA Act also provides for the collection of DNA samples from individuals in the custody of the Bureau of Prisons who have been convicted of a qualifying Federal offense. 42 U.S.C. § 14135a(a)(1).

control purposes." 42 U.S.C. §§ 14135e(b), 14132(b)(3). The Act also provides that a person who, without authorization, knowingly discloses or obtains a DNA sample collected pursuant to the Act shall be fined up to $100,000. *Id.* § 14135e(c).

On June 11, 1997, Stegman pled guilty to aiding and abetting the attempted acquisition of a firearm by making a false statement to a licensed dealer, in violation of 18 U.S.C. § 922(a)(6) and 18 U.S.C. § 2(a). On August 1, 1997, the court sentenced Stegman to a term of 63 months of imprisonment, to be followed by three years of supervised release. Stegman was released from prison on September 21, 2001, and began serving his term of supervised release.

On March 11, 2002, William F. Henry, Chief U.S. Probation Officer for the District of Maryland, sent Stegman a letter explaining to him that he was required to submit a blood sample and fingerprints, pursuant to a federal law enacted in December 2000 that requires persons convicted of certain federal offenses and released under the supervision of the U.S. Probation Office to cooperate in the collection of a DNA blood sample. (Def.'s Mot. at Ex. B.) On March 18, Sharon A. Jacobs, the U.S. Probation Officer assigned to Stegman, sent him a letter instructing him to submit a blood sample on March 28. (*Id.* at Ex. C.) The qualifying federal offense that served as the basis of this request was a bank robbery in violation of 18 U.S.C. §§ 2113(a), and (f), for which Stegman pled guilty on July 16, 1982 and was sentenced in this court on September 9, 1982. (*Id.* at Ex. E.) Stegman's attorney, Assistant Federal Public Defender Jeffrey E. Risberg, notified Jacobs on March 27, 2002 that Stegman would not comply with her order and that he would challenge the constitutionality of the DNA Act. (*Id.* at Ex. D.) On April 26, Jacobs filed a notice of violation of supervised release alleging that Stegman failed to follow her instructions and that Stegman committed another crime in violation of federal law by failing to provide a blood sample on March 28. (*Id.* at Ex. E.)

Stegman now seeks to dismiss the notice of violation of supervised release. He challenges the constitutionality of the DNA Act on four grounds: (1) the Act violates the *ex post facto* clause; (2) the Act violates the Fourth Amendment; (3) the Act violates the separation of powers doctrine; and (4) the Act violates the double jeopardy clause.

## ANALYSIS

### 1. Whether Application of the DNA Act Violates the *Ex Post Facto* Clause

#### a. Application of the DNA Act to the Current Offense

■ Stegman's first challenge is that application of the DNA Act to Mr. Stegman's current offense, the 1997 firearms conviction, violates the *ex post facto* clause because it operates retroactively and imposes a new condition of supervised release, thus increasing the punishment for the firearms offense beyond that available at the time that the offense was committed. (Def.'s Mot. at 4–6.)

■ The *ex post facto* clause simply provides, "No State shall … pass any … ex post facto Law." U.S. Const. Art. I, § 9, cl. 3. The clause, however, has been more clearly defined:

It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one

charged with crime of any defense available according to law at the time that the act was committed, is prohibited as *ex post facto.*

*Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (quoting *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 70 L.Ed. 216 (1925)); *see also Carmell v. Texas,* 529 U.S. 513, 522–25, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000); *Jones v. Murray,* 962 F.2d 302, 309 (4th Cir.1992). Stegman argues that application of the DNA Act to him makes the punishment for his two prior offenses more burdensome. "To prevail on this sort of *ex post facto* claim, [Stegman] must show both that the law he challenges operates retroactively (that it applies to conduct completed before its enactment) and that it raises the penalty from whatever the law provided when he acted." *Johnson v. United States,* 529 U.S. 694, 699, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000).

The government does not dispute Stegman's contention that the DNA Act operates retroactively. Instead, the government focuses its argument on whether application of the DNA Act increases Stegman's punishment for his prior offenses. As applied to the 1997 firearms conviction, Stegman asserts that it is the sanction imposed for failing to submit the DNA sample—the potential revocation of supervised release and/or conviction for a new crime—rather than the forced extraction of the sample itself, that constitutes the increased punishment. (Def.'s Mot. at 5.) Stegman's argument fails.

First, the potential revocation of Stegman's supervised release does not increase Stegman's punishment for the 1997 firearms conviction. As part of Stegman's original sentence, he was subject to a mandatory condition of supervised release that he "not commit another Federal, State, or local crime." (*Id.* at Ex. A; *see also* 18 U.S.C. § 3583(d).) Stegman has cited no

authority, and the court has found none, standing for the proposition that 18 U.S.C. § 3583(d) applies only to crimes that were in effect at the time of sentencing. In addition, Stegman was subject to a condition that he "follow the instructions of the probation officer." (Def's. Mot. at Ex. A.) It is the alleged violation of these conditions that serves as the basis of the notice of violation of supervised release issued by the probation officer. (*See id.* at Ex. E.) The relevant conditions of supervised release were part of the original sentence and have not been altered. *See United States v. Evans,* 159 F.3d 908, 913 (4th Cir.1998) ("[T]he term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violating the terms of the supervised release are all part of the original sentence."); *see also Miller v. U.S. Parole Comm'n,* 259 F.Supp.2d 1166, 1170 (D.Kan.2003) (noting that revocation of supervised release for failure to comply with the DNA Act is part of a probationer's original sentence, and thus does not constitute new punishment). Thus, the penalty for Stegman's 1997 firearms offense has not been increased from "whatever the law provided when he acted." *Johnson,* 529 U.S. at 699, 120 S.Ct. 1795.

■ Second, a potential misdemeanor conviction for failure to cooperate does not increase Stegman's punishment for the 1997 firearms conviction. The DNA Act criminalizes Stegman's March 2002 failure to comply with the previously enacted DNA Act. Thus, if Stegman is convicted of a misdemeanor pursuant to 42 U.S.C. § 14135a(a)(5), the conviction will criminalize a new act (or omission) rather than increase the punishment for an old act. *See Vore v. U.S. Dep't of Justice,* 281 F.Supp.2d 1129, 1138 (D.Ariz.2003); *Miller,* 259 F.Supp.2d at 1171; *United States v. Sczubelek,* 255 F.Supp.2d 315, 325

548

(D.Del.2003); *United States v. Reynard,* 220 F.Supp.2d 1142, 1160 (S.D.Cal.2002).

### b. Application of the DNA Act to the Prior Offense

■ Stegman's second challenge is that application of the DNA Act to Mr. Stegman's prior offense, the 1982 bank robbery conviction, violates the *ex post facto* clause because it operates retroactively and allows for collection of DNA samples for the first time. As applied to this offense, Stegman asserts that it is the forced extraction of the DNA sample itself that constitutes the increased punishment. (Def.'s Mot. at 6–7.) This argument also fails.

■ "[A] statute that is not penal cannot be *ex post facto.*" *Jones,* 962 F.2d at 309. In this Circuit, requiring prisoners to provide blood samples for DNA testing has been held not to be punitive and not, in itself, a violation of the *ex post facto* Clause. *Id.; see also Ewell v. Murray,* 11 F.3d 482, 485–86 (4th Cir.1993). Several other courts similarly have held that the federal DNA Act is not *ex post facto,* because it is not penal and thus does not impose additional punishment for a prior offense. *See Vore,* 281 F.Supp.2d at 1138 (noting that "[t]he DNA Act is not designed to punish those who have already been convicted."); *Miller,* 259 F.Supp.2d at 1172; *Sczubelek,* 255 F.Supp.2d at 325; *Reynard,* 220 F.Supp.2d at 1161 (explaining that "[t]he legislative history of the DNA Act demonstrates that Congress did not create the Act as a means for punishing qualifying offenders for past convictions"). Accordingly, the forced extraction of DNA from Stegman is not penal, does not increase his punishment for his prior bank robbery offense, and thus, does not violate the *ex post facto* clause.

### 2. Whether Application of the DNA Act Violates the Fourth Amendment

■ It is undisputed that the Act allows the government to withdraw blood samples from qualified offenders without a warrant, probable cause, or even individualized suspicion. Moreover, it is undisputed that taking a blood sample constitutes a search under the Fourth Amendment. *See Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 616, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *Schmerber v. California,* 384 U.S. 757, 767–68, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Nonetheless, "the Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable." *Skinner,* 489 U.S. at 619, 109 S.Ct. 1402. The issue remains whether the search authorized by the Act is unreasonable, and, therefore, in violation of the Fourth Amendment.

Stegman's Fourth Amendment argument focuses on the applicability of the Fourth Circuit's holding in *Jones v. Murray, supra* to the DNA Act. (Def.'s Mot. at 9–13.) In *Jones,* the Fourth Circuit upheld the constitutionality of a Virginia statute requiring incarcerated felons to provide the Commonwealth with a blood sample for DNA analysis and storage. *See* 962 F.2d at 304. The court noted that "when a suspect is arrested upon probable cause, his identification becomes a matter of legitimate state interest and he can hardly claim privacy in it." *Id.* at 306. Thus, the court concluded that "the Fourth Amendment does not require an additional finding of individualized suspicion before blood can be taken from incarcerated felons for the purpose of identifying them." *Id.* at 306–07. Weighing the "minor intrusion" of obtaining a blood sample against the governmental interest "in preserving a permanent identification record of convicted felons for resolving past and future crimes," the Fourth Cir-

cuit upheld the DNA collection requirement as reasonable under the Fourth Amendment. *See id.* at 307. Ultimately, *Jones* is not distinguishable and therefore controls this court's decision.

 Stegman attempts to distinguish *Jones* by arguing that his privacy interests are more significant than the interests of the incarcerated inmates subject to the Virginia statute in *Jones.* (Def.'s Mot. at 10–11.) This argument is unpersuasive. Stegman focuses on the fact that he has "fully served the sentence for his apparent 'qualifying Federal offense' of bank robbery." (*Id.* at 10.) While this is true, it is also significant that Stegman subsequently committed another offense for which the sentence included a period of supervised release, which Stegman currently is serving. The DNA Act only applies to current federal prisoners and those individuals who currently are on supervised release, probation, or parole. 42 U.S.C. § 14135a(a)(1), and (a)(2). The Supreme Court affords reduced Fourth Amendment protections to probationers and parolees, as well as to prisoners and pretrial detainees. *See Griffin v. Wisconsin,* 483 U.S. 868, 874–75, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (noting that probationers enjoy reduced liberties, allowing "a degree of impingement upon privacy that would not be constitutional if applied to the public at large"); *Hudson v. Palmer,* 468 U.S. 517, 525–26, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (holding that a prisoner has no reasonable expectation of privacy, and thus is not entitled to Fourth Amendment protections, in his prison cell); *Bell v. Wolfish,* 441 U.S. 520, 558–60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (holding that routine strip searches of pretrial detainees that were not supported by probable cause were reasonable under the Fourth Amendment); *see also Jones,* 962 F.2d at 306. Although the *Jones* court did not have occasion to consider the application of a DNA collection requirement to probation-

ers, parolees, or individuals on supervised release, Stegman has failed to persuade this court that this is a distinction that makes a difference in the outcome.

The Supreme Court's recent opinion in *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) does not conflict with *Jones.* In that case, the Court held that a warrantless search of a probationer's home, which was authorized by the conditions of his probation and supported by reasonable suspicion, was reasonable under the totality of the circumstances and thus did not violate the Fourth Amendment. *See* 534 U.S. at 118, 122 S.Ct. 587. The Court noted that "probationers do not enjoy the absolute liberty to which every citizen is entitled." *Id.* at 119, 122 S.Ct. 587 (quoting *Griffin,* 483 U.S. at 874, 107 S.Ct. 3164). However, the Court did not reach the question "whether the probation condition so diminished, or completely eliminated, [the probationer's] reasonable expectation of privacy ... that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment." *Id.* at 120 n. 6, 122 S.Ct. 587.

Stegman also argues that the Act cannot be justified under the "special needs" exception to the Fourth Amendment's warrant requirement in light of the Supreme Court's recent decisions in *City of Indianapolis v. Edmond,* 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) and *Ferguson v. City of Charleston,* 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001), which further refined the "special needs" exception. The Fourth Circuit did not rely on the "special needs" exception in its *Jones* opinion, however, finding that the Fourth Amendment rights of prisoners comprised a "separate category of cases." *See* 962 F.2d at 307 n. 2. Accordingly, while noting that *Ferguson* did not overrule *Griffin,* but

rather limited *Griffin*'s holding to its facts because probationers have a lesser expectation of privacy than the public at large, *see Ferguson*, 532 U.S. at 79 n. 15, 121 S.Ct. 1281, I do not reach the question whether the DNA Act could be sustained under the "special needs" exception to the Fourth Amendment's warrant requirement. *Cf. United States v. Kincade*, 345 F.3d 1095, 1104 (9th Cir.2003); *United States v. Kimler*, 335 F.3d 1132, 1146 (10th Cir.2003); *Vore*, 281 F.Supp.2d at 1137; *Miller*, 259 F.Supp.2d at 1176–78; *Sczubelek*, 255 F.Supp.2d at 323; *Reynard*, 220 F.Supp.2d at 1169; *Miles*, 228 F.Supp.2d at 1140. I am bound by the Fourth Circuit's opinion in *Jones v. Murray* in finding that the DNA Act does not violate the Fourth Amendment.[2]

### 3. Whether the DNA Act Violates the Separation of Powers Doctrine

■■■ Stegman next argues that the DNA Act's requirement that probation officers collect DNA samples from individuals on supervised release violates the separation of powers doctrine. Specifically, Stegman argues that probation officers are judicial officers who should not be performing duties traditionally performed by the executive branch in a role as "adjunct law enforcement officers." (Def.'s Mot. at 13–15.)

Contrary to Stegman's characterization, the probation officers are not acting as "adjunct law enforcement officers" in performing their duties under the DNA Act, but rather as neutral agents for the courts. Probation officers are appointed by the district courts, and serve under their di-

rection. 18 U.S.C. § 3602. They supervise and monitor individuals on probation or supervised release, provide information to the courts on these individuals, and investigate and prepare presentence reports for the courts. *Id.* §§ 3552(a), 3601, 3603. They also are authorized to arrest probationers or persons on supervised release if there is probable cause to believe that an individual has violated a condition of his probation or release. *Id.* § 3606. In performing these functions, probation officers have been described as "neutral, information-gathering agent[s] of the court, not an agent of the prosecution." *United States v. Johnson*, 935 F.2d 47, 49–50 (4th Cir.1991). Relying on this characterization, the Fourth Circuit has upheld the role of probation officers in preparing presentence reports. *See United States v. Washington*, 146 F.3d 219, 223 (4th Cir. 1998); *see also United States v. Bermudez–Plaza*, 221 F.3d 231, 234–35 (1st Cir. 2000) (upholding the probation officer's role in initiating the revocation of supervised release); *United States v. Woods*, 907 F.2d 1540, 1543–44 (5th Cir.1990) (upholding the probation officer's role in preparing presentence reports); *United States v. Belgard*, 894 F.2d 1092, 1096–99 (9th Cir.1990) (same). The duties delegated to the probation officers under the DNA Act are not different in kind from their other functions, and do not convert probation officers into adjunct law enforcement officers.

■■■ Even if the duties performed by probation officers under the DNA Act are properly characterized as executive

---

**2.** The court in *Jones* confronted an argument that the Virginia DNA statute could not be justified with respect to the testing of nonviolent felons. *See Jones*, 962 F.2d at 308. The court rejected this argument and held that the Virginia statute was constitutional as applied to violent or nonviolent convicted felons. *See id.* Thus, the *Jones* holding seemingly applies

to any individual on supervised release. Still, the fact that the DNA Act only applies to individuals on supervised release who at some time committed a qualifying Federal offense— a limited set of offenses which are predominantly violent offenses—only further supports the conclusion that *Jones* dictates the outcome of this motion.

rather than judicial, this alone is insufficient to render the Act unconstitutional. "Within our political scheme, the separation of governmental powers into three coordinate branches is essential to the preservation of liberty." *Mistretta v. United States,* 488 U.S. 361, 380, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Nonetheless, the three branches of government are not required to be "entirely separate and distinct." *Id.* In recognition of the practical necessity of some overlapping responsibility and interdependence among the branches, *see id.* at 381, 109 S.Ct. 647, the Court has upheld "statutory provisions that to some degree commingle the functions of the Branches, but that pose no danger of either aggrandizement or encroachment," *id.* at 382, 109 S.Ct. 647. For example, the Court has noted that Congress may authorize an independent agency located within the judicial branch to perform nonadjudicatory functions, even though a similar delegation to a federal judge might violate the separation of powers doctrine. *Id.* at 394 n. 20, 109 S.Ct. 647. The duties delegated to probation officers under the DNA Act pose no danger of aggrandizement of the judicial branch or encroachment on the executive branch, but instead reflect the practical necessity of a limited degree of commingling and interdependence among the branches. *See Sczubelek,* 255 F.Supp.2d at 324; *Reynard,* 220 F.Supp.2d at 1170. The DNA Act thus does not violate the separation of powers doctrine.

### 4. Whether the DNA Act Violates the Double Jeopardy Clause

■ Stegman's final argument is that the DNA Act's requirement that he submit a blood sample violates the double jeopardy clause, because Stegman is being punished again for his 1982 bank robbery conviction and his 1997 firearms conviction. (Def.'s Mot. at 15–16.)

■ The double jeopardy clause "protects defendants against second prosecutions for the same offense after either an acquittal or a conviction and against multiple punishments for the same offense." *United States v. Bowe,* 309 F.3d 234, 238 (4th Cir.2002) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). Thus, the double jeopardy clause only applies to governmental acts that are punitive. *See Kansas v. Hendricks,* 521 U.S. 346, 369, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); *United States v. Imngren,* 98 F.3d 811, 817 (4th Cir.1996); *United States v. Glymph,* 96 F.3d 722, 725 (4th Cir.1996). As discussed above, *supra* section 1.b., the forced extraction of DNA from Stegman is not penal or punitive in nature. Under the DNA Act, Stegman is not being subjected to "punishment" for either his 1982 bank robbery conviction or his 1997 firearms conviction. Accordingly, the double jeopardy clause is not violated.

A separate order follows.

### *ORDER*

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. defendant's motion to dismiss notice of violation of conditions of supervised release (docket no. 13) is **DENIED;** and

2. copies of this Order and the accompanying Memorandum shall be sent to counsel of record and the United States Probation Office.