Melvin SHELTON, Plaintiff,

v.

Donald W. GUDMANSON, Dick Verhagen, Kristine Timm, James Doyle, Jeff Campbell, G. Peters, J. Boyce, and Donald Klemmer, Defendants.

No. 95–C–0709–C.

United States District Court,
W.D. Wisconsin.

June 14, 1996.

Melvin Shelton, Oshkosh, WI, pro se.

Eileen W. Pray, Assistant Attorney General, Madison, WI, for Donald W. Gudmanson, Dick Verhagen, Kristine Timm, Jeff Campbell, G. Peters, J. Boyce, Donald Klemmer.

## OPINION AND ORDER

CRABB, District Judge.

Wis.Stat. § 165.76 requires inmates of state correctional facilities who have been convicted of sexual assault offenses to provide biological specimens to the state for inclusion in a deoxyribonucleic acid (DNA) analysis and data bank established under Wis.Stat. § 165.77. In this civil action for monetary and injunctive relief brought pursuant to 42 U.S.C. § 1983, plaintiff Melvin Shelton, an inmate confined at the Oshkosh Correctional Institution, contends that the state law and the manner in which defendants have implemented it violate his rights under the Fourth Amendment. Defendants have moved for summary judgment on the ground that plaintiff's claim fails as a matter of law because the taking of the sample was a search that comported with the requirements of the Fourth Amendment. I conclude that defendants are correct. Their motion for summary judgment will be granted.

From the parties' proposed findings of fact, I find the following material facts to be undisputed.

## UNDISPUTED FACTS

Plaintiff Melvin Shelton is serving a twenty-year sentence for first degree sexual assault in violation of Wis.Stat. § 940.225(1)(d). He is incarcerated in the Oshkosh Correctional Institution in Oshkosh, Wisconsin. Defendant Donald Gudmanson is the warden at Oshkosh; defendant Kristine Timm is Gudmanson's administrative assistant; defendant Donald Klemmer is a correctional officer at Oshkosh; defendants G. Peters and J. Boyce are employees of the Department of Corrections. (Defendant Jeff Campbell has never been served and is therefore not a party to this action.)

In 1993, the state of Wisconsin created a forensic DNA data base for use in state crime laboratories. DNA is the encoded genetic information contained within almost all human cells and is unique in every person, with the exception of identical siblings. It is specific enough to allow trained staff and investigators to implicate as well as exonerate individual suspects by comparing DNA samples from known individuals with residue left at crime scenes. DNA identification can narrow a match to less than one percent of the population whereas conventional methods of blood typing can narrow the pool of possible sources of blood evidence to between one and fifty percent of the population. The state legislature enacted Wis.Stat. §§ 165.76 and 165.77 in the belief that DNA matching would be helpful in identifying sex offenders, who have a high rate of recidivism. The data bank is expected to enable investigators to eliminate suspects promptly and to lead to more accurate prosecutions. In accordance with the statute, the state has been putting DNA profiles of known offenders of certain sex crimes into the data base.

The Department of Corrections enforces Wis.Stat. § 165.76 as follows: first, the inmate is informed of the law and the procedure (swabbing the inside of the inmate's cheek mouth with a sponge-like toothbrush) and is provided an opportunity to comply voluntarily. If the inmate refuses or resists, he is ordered to comply. If he continues to resist, he is issued a major conduct report for disobeying orders and, if found guilty, can lose good time. Sometime later, the inmate is given another chance to provide a sample. If he refuses again, he is ordered to comply. Continued resistance leads to a second conduct report and corrections officials will take a blood sample forcibly from the inmate by the finger stick method.

In the course of implementing its plan to build a data base, the Wisconsin Department of Corrections wrote to plaintiff, informing him of the reason for the DNA sampling procedure and its nature, requesting his written consent and setting forth the potential criminal penalties for not complying. On both May 16 and August 14, 1995, plaintiff refused to cooperate. Defendant Timm met with plaintiff, showed him the sponges to be used in the sampling procedure and explained the procedure verbally. On August 14, Timm gave plaintiff a direct order to provide a specimen and issued a conduct report a day later when plaintiff refused to comply. On September 5, 1995, plaintiff provided a DNA sample in accordance with the sampling procedure, which involved rubbing

the inside of each of plaintiff's cheeks with a small sponge on a toothbrush-like handle for approximately fifteen seconds. The sponges were sent later to a laboratory for use in the forensic DNA program.

## OPINION

Plaintiff's sole claim is that the taking of his DNA sample constituted an unreasonable search in violation of his Fourth Amendment rights because it was executed without his permission and without an order or warrant. Defendants dispute the lack of permission, alleging that plaintiff agreed on September 5, 1995, to submit voluntarily to swabbing. Plaintiff avers that the sample was taken forcibly over his objections. For the purpose of deciding defendants' motion, I will resolve this disputed fact in plaintiff's favor and will assume that plaintiff did not agree to provide a DNA sample voluntarily.

In addition, I will assume for the purpose of this opinion that the non-consensual taking of such a sample from an inmate constitutes a search and thus implicates Fourth Amendment privacy rights. *See Schmerber v. California,* 384 U.S. 757, 767, 86 S.Ct. 1826, 1833-34, 16 L.Ed.2d 908 (1966) (taking blood sample from a suspected drunken driver is search); *Rise v. Oregon,* 59 F.3d 1556, 1559 (9th Cir.1995) (applying *Schmerber* analysis to the drawing of blood from prisoners for DNA analysis); *Jones v. Murray,* 962 F.2d 302, 306 (4th Cir.) (same), *cert. denied,* 506 U.S. 977, 113 S.Ct. 472, 121 L.Ed.2d 378 (1992). However, a cheek swab to obtain DNA information could be analyzed like fingerprinting and be held not to constitute a search but rather simply part of the routine identification process that takes place when persons are arrested. *See Smith v. United States,* 324 F.2d 879, 882 (D.C.Cir.1963) (person in lawful custody may be required to submit to photographing and fingerprinting as part of routine identification process; no need for warrant before collecting such information). *See also Rise,* 59 F.3d at 1560 (once inmate is convicted of predicate offense, "his identity has become a matter of state interest and he has lost any legitimate expectation of privacy in the identifying information derived from the blood sampling").

 Assuming that non-consensual cheek swabbing to obtain DNA material is a search, it is necessary to determine whether it is one that is reasonable under the Fourth Amendment. Reasonableness requires "that the facts upon which an intrusion is based be capable of measurement against an 'objective standard,' whether this be probable cause or a less stringent test." *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979) (footnotes omitted). Generally, the Fourth Amendment requires searchers to obtain a warrant that establishes "probable cause," based on individualized suspicion, *Griffin v. Wisconsin,* 483 U.S. 868, 873, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987), but there are a number of exceptions to this general rule. Among them is the expanding field of "special needs" beyond the normal need for law enforcement. *New Jersey v. T.L.O.,* 469 U.S. 325, 351, 105 S.Ct. 733, 747-48, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring). Like administrative searches, in which the warrant and probable cause showing are replaced by the requirement of showing a neutral plan for execution, a compelling governmental need, the absence of less restrictive alternatives and reduced privacy rights, *see Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), special needs searches adopt a balancing of interests approach. Special needs searches have been held to include drug testing of railway executives, *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), customs officers, *National Treasury Employees Union v. Von Raab,* 489 U.S. 656 (1989), probationers' homes, *Griffin,* 483 U.S. at 868, 107 S.Ct. at 3165-66, and high school students participating in athletics, *Vernonia School District 47J v. Acton,* —— U.S. ——, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). In determining the reasonableness of these searches, the Supreme Court has considered the governmental interest involved, the nature of the intrusion, the privacy expectations of the object of the search and, to some extent, the manner in which the search is carried out. In *Griffin,* 483 U.S. at 868, 107 S.Ct. at 3165-66, for example, the Court noted that the warrantless search of the proba-

tioner's home had been carried out pursuant to valid regulations promulgated by the state. Although the state's DNA testing of inmates is ultimately for a law enforcement goal, it seems to fit within the special needs analysis the Court has developed for drug testing and searches of probationers' homes, since it is not undertaken for the investigation of a specific crime.

In the order granting plaintiff leave to proceed *in forma pauperis*, I noted that a number of courts had held that the Fourth Amendment does not prevent the taking of blood samples for use in creating a DNA data bank. *See Rise*, 59 F.3d 1556; *Jones*, 962 F.2d 302; *Vanderlinden v. Kansas*, 874 F.Supp. 1210 (D.Kan.1995); *Sanders v. Coman*, 864 F.Supp. 496 (E.D.N.C.1994); *Ryncarz v. Eikenberry*, 824 F.Supp. 1493, 1500 (E.D.Wash.1993). In these cases, the courts found that the government had a significant interest in maintaining a permanent identification record of convicted felons for resolving past and future crimes; the intrusion was minimal; the inmates had only a very limited privacy interest at stake; and the sampling was carried out pursuant to state regulations that required the testing of every inmate falling within a certain category, thus ensuring that arbitrary testing decisions would not be made.

In support of their motion for summary judgment, defendants have shown that Wisconsin's interest in the DNA data bank is similar to that of the states in which such banks have been upheld against constitutional challenge. The state wishes to obtain information that can be used to investigate and prosecute sexual assault crimes accurately and quickly. It has confined the collecting of such data to those offenders that have been shown to have a relatively high likelihood of recidivism. Given the minimal nature of the intrusion that a cheek swab entails, the limited privacy interest that an inmate convicted of sexual assault retains in his identifying information and the government's interest in identifying and prosecuting sexual offenders promptly and accurately, I conclude that the DNA collection process did not violate plaintiff's Fourth Amendment rights.

The state law and the implementing regulations protect against the potential for arbitrariness in governmental searches that the Fourth Amendment is intended to prevent. "An essential purpose of a warrant requirement is to protect privacy interests by assuring citizens subject to a search or seizure that such intrusions are not the random or arbitrary acts of government agents." *Skinner*, 489 U.S. at 621–22, 109 S.Ct. at 1415–16. The standardized nature of the DNA collection process gives minimal discretion to the persons administering it, leaving little for a neutral magistrate to evaluate for reasonableness.

In summary, I conclude that the DNA sampling to which plaintiff was subjected was not an unreasonable search under the Fourth Amendment in light of the relatively minimal intrusion into plaintiff's limited privacy interests posed by the DNA sampling and the public's considerable interest in preventing recidivism by sex offenders and identifying and prosecuting such offenders.

## ORDER

IT IS ORDERED that the motion for summary judgment of defendants Donald W. Gudmanson, Dick Verhagen, Kristine Timm, James Doyle, G. Peters, J. Boyce and Donald Klemmer is GRANTED. The complaint is DISMISSED against defendant Jeff Campbell for plaintiff's failure to ascertain this defendant's address so that he could be served. The clerk of court is directed to enter judgment for all defendants and close this case.