NOT DESIGNATED FOR PUBLICATION

No. 117,721

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILFRED J. NWOJI JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed August 24, 2018.
Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before MCANANY, P.J., PIERRON, J., and WALKER, S.J.

PER CURIAM: Wilfred M. Nwoji pleaded guilty to one count of criminal threat, and the district court sentenced him to probation. Over his objection, the court ordered that he submit to random drug and alcohol testing as a probation condition. For the first time on appeal, Nwoji argues that K.S.A. 2017 Supp. 21-6607(c)(6), which requires district courts to impose random drug and alcohol testing as a probation condition, is unconstitutional under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. We affirm.

1

The charges stemmed from an incident in which Nwoji strangled his girlfriend and threatened to kill her. A presentence investigation (PSI) report showed Nwoji had a criminal history score of H with at least eight prior drug or alcohol related convictions. He was on probation for possession of marijuana and drug paraphernalia at the time he committed the current offense.

The district court sentenced Nwoji to 12 months' probation with an underlying 7-month prison sentence. As a term of probation, the court ordered Nwoji to "[a]t your own expense submit to random breath, blood or urine testing, as directed by probation and at the . . . minimum once every 30 days." Nwoji's counsel objected to this condition, arguing that by law "there has to be cause or some sort of reasonable suspicion." The court responded,

> "Yeah, my reasonable suspicion is the facts underlying this case and the actions and attitudes of the defendant, which are out of line with his behavior as it is today, not under the influence. And the fact that he has one, two , three, four, five, six, seven, eight prior substance abuse convictions spanning 14 years, so clearly substance abuse is a fuel for him to commit offenses. So that's the basis, but I note your objection."

Nwoji appeals this condition.

*Constitutionality of K.S.A. 2017 Supp. 21-6607(c)(6).*

On appeal, Nwoji argues that K.S.A. 2017 Supp. 21-6607(c)(6) is unconstitutional. He contends the statutory requirement that all probationers must submit to random drug or alcohol testing violates probationers' rights under the Fourth Amendment and § 15. He asserts the statute is inconsistent with *State v. Bennett*, 288 Kan. 86, 200 P.3d 455 (2009). There, the Kansas Supreme Court held that probation or law enforcement officers "must

2

have a rational, articulable suspicion of a probation violation or other criminal activity before subjecting the probationer's person or property to a search." 288 Kan. at 99.

The State presents many arguments to counter Nwoji's claim. The State starts out by arguing we should not address the constitutionality of K.S.A. 2017 Supp. 21-6607(c)(6) at all. It contends we should not hear Nwoji's challenge for the first time on appeal because the record does not contain the necessary facts. Next, the State contends we lack jurisdiction because Nwoji lacks standing and the issue is not ripe. The State also asserts Nwoji has waived and abandoned his argument because he did not adequately brief it.

As for the merits, the State responds that K.S.A. 2017 Supp. 21-6607(c)(6) is constitutional under one of the exceptions to the Fourth Amendment's individualized suspicion requirements. It claims the special need beyond law enforcement exception applies because the statute is part of a scheme to supervise probationers. It also asserts the administrative search exception applies because drug and alcohol testing is necessary to the administration of the probation system. The State acknowledges *Bennett* but counters that changes in Kansas law undermine that holding.

While there are a number of problems with addressing the arguments on appeal, we will do so in case of review.

*Preservation*

To begin with, we must address whether this issue is properly before us. Nwoji objected to his probation condition before the district court, but he did not challenge the constitutionality of K.S.A. 2017 Supp. 21-6607(c)(6). Generally, constitutional arguments raised for the first time on appeal are not properly before this court. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). This rule has several exceptions

3

though, including: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court is right for the wrong reason. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Nwoji acknowledges he did not raise this issue below but argues we may still address it because two exceptions apply. He contends his challenge to the constitutionality of K.S.A. 2017 Supp. 21-6607(c)(6) presents only a question of law. He also asserts consideration of his argument is necessary to serve the ends of justice and prevent the denial of fundamental rights guaranteed by the United States and Kansas Constitutions.

The State responds that none of the exceptions apply here. It notes that while the constitutionality of a statute is often a question of law, the constitutionality of a search is subject to a totality of the circumstances analysis. It points out that a totality of the circumstances approach requires courts to determine the facts underlying the search. Those facts do not exist here because Nwoji did not raise this issue below and no search has occurred.

Nwoji counters that he is bringing a facial challenge to this statute. According to Nwoji, this type of challenge involves no particular search and needs no facts particular to Nwoji. He adds that the constitutionality of a statute is always a question of law. See *State v. Ryce*, 303 Kan. 899, 905, 368 P.3d 342 (2016).

While the constitutionality of a statute is ordinarily a question of law, some constitutional challenges present mixed questions of law and fact. See *State v. Mossman*, 294 Kan. 901, 906, 281 P.3d 153 (2012). For example, a challenge to the constitutionality of a sentence under § 9 of the Kansas Constitution Bill of Rights requires the district

4

court to make both legal and factual findings. 294 Kan. at 906. Likewise, determining the constitutionality of a search authorized by statute requires courts to analyze the circumstances of the search. See *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 619, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989). In doing this, courts must weigh the search's intrusion on an individual's privacy against the promotion of legitimate government interests. *Samson v. California*, 547 U.S. 843, 848, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006). This requires some facts, such as how the search is conducted. See *State v. Martinez*, 276 Kan. 527, 530, 78 P.3d 769 (2003).

Because Nwoji did not raise this issue below, the record contains little information relevant to the circumstances of a search under K.S.A. 2017 Supp. 21-6607(c)(6). Most critically, Nwoji did not establish the methods of drug and alcohol testing authorized by the statute. Without this information, we cannot determine the extent of any invasion on a probationer's privacy rights under this statute. As a result, we cannot resolve this issue for the first time on appeal.

*Inadequate Briefing*

Another bar to review that the State presents is that Nwoji has waived and abandoned this issue because of inadequate briefing. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (holding appellants waive or abandon an issue when they fail to brief it). Nwoji relies solely on *Bennett* to show that K.S.A. 2017 Supp. 21-6607(c)(6) is unconstitutional. According to the State, Nwoji has failed to address adequately the effect of changes in Kansas law on *Bennett*.

In *Bennett*, the Kansas Supreme Court held that probation or law enforcement officers "must have a rational, articulable suspicion of a probation violation or other criminal activity before subjecting the probationer's person or property to a search." 288 Kan. at 99. In reaching that decision, the court noted: "The Kansas Legislature has not

authorized suspicionless searches of probationers or parolees." 288 Kan. at 98. The court also observed that "parolees in Kansas have an expectation that they will not be subjected to suspicionless searches" based on the parole supervision procedure at the time of the decision. 288 Kan. at 98. Because probationers have a greater expectation of privacy than parolees, the court reasoned that probationers could not be subject to suspicionless searches. 288 Kan. at 98-99.

Since *Bennett*, notable changes to Kansas law have taken place. In 2012, the Kansas Legislature amended K.S.A. 21-6607 to allow for suspicionless drug and alcohol testing of probationers. L. 2012, ch. 70, § 1. The Legislature also amended K.S.A. 22-3717 to authorize suspicionless searches of parolees by parole officers. L. 2012, ch. 70, § 2. In his brief, Nwoji acknowledges that the Kansas Legislature amended K.S.A. 2017 Supp. 21-6607(c), but he does not mention the change to K.S.A. 2017 Supp. 21-3717. He also does not explain what effect these changes may have had on the reasoning in *Bennett*.

Nwoji also does not engage in the traditional balancing test to determine if a search is reasonable under the Fourth Amendment. He discusses probationers' privacy rights, but he does not address the extent of any intrusion on those rights or the government's interest in conducting these tests. Nwoji asserts this analysis is irrelevant because the probation condition does not require probation officers to consider any circumstances before ordering a test. But he fails to recognize that courts still use this balancing test even when analyzing suspicionless drug and alcohol testing. See, e.g., *Treasury Employees v. Von Raab*, 489 U.S. 656, 665-66, 109 S. Ct. 1384, 103 L. Ed. 2d 685 (1989); *Skinner*, 489 U.S. at 619. For these reasons, Nwoji has failed to brief this issue adequately.

6

*Standing and Ripeness*

The State argues we lack jurisdiction because Nwoji lacks standing and the issue is not ripe. Standing and ripeness are components of subject matter jurisdiction. *KNEA v. State*, 305 Kan. 739, 743, 387 P.3d 795 (2017). Whether jurisdiction exists is a question of law over which we have unlimited review. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016).

Standing is the "right to make a legal claim or seek enforcement of a duty or right." *Gannon v. State*, 298 Kan. 1107, 1122, 319 P.3d 1196 (2014). Parties establish standing by showing that (1) they have suffered a cognizable injury and (2) a causal connection exists between the injury and the challenged conduct. *Solomon v. State*, 303 Kan. 512, 521, 364 P.3d 536 (2015). To establish a cognizable injury, the party must show "a personal interest in a court's decision and that he or she personally suffers some actual or threatened injury as a result of the challenged conduct." *Sierra Club v. Moser*, 298 Kan. 22, 33, 310 P.3d 360 (2013).

The doctrine of ripeness prevents courts from deciding abstract issues. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 892, 179 P.3d 366 (2008). "To be ripe, issues must have taken shape and must be concrete rather than hypothetical and abstract." 285 Kan. at 892. An issue is not ripe if it is "'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all.' 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3532 (1984)." *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580-81, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985).

The State argues that Nwoji has not submitted to a search, so he has not suffered an actual or concrete injury which would create standing. For the same reason, the State contends the issue is not ripe.

7

Nwoji responds that the district court has already applied the challenged statute to him because the court ordered it as a condition of his probation. He reasons that a judgment in a criminal case is effective on pronouncement from the bench, so the statute has already begun adversely affecting his rights. See *State v. Royse*, 252 Kan. 394, 397, 845 P.2d 44 (1993). He adds that defendants may challenge probation conditions on direct appeal. See *State v. Schad*, 41 Kan. App. 2d 805, 811, 206 P.3d 22 (2009).

Kansas courts have addressed the constitutionality of a probation condition ordering searches of the probationer on direct appeal without discussing whether the probationer had been subject to an actual search. See, e.g., *Bennett*, 288 Kan. 86; *State v. Gordon*, No. 94,477, 2006 WL 1379689, at *2-3 (Kan. App. 2006) (unpublished opinion). These cases do not address standing or ripeness, though. Independent research uncovered no cases addressing when a probationer has standing to challenge a probation condition or when that challenge is ripe.

Nwoji has standing to challenge the constitutionality of this statute. He has a personal interest in resolving this issue because the district court has ordered him to submit to drug and alcohol testing under the statute. Were we to find the statute unconstitutional, Nwoji would no longer be subject to this condition. And Nwoji is not challenging a search, but a probation condition which is already in effect. If the condition alone is not enough to establish an actual injury, the impending drug testing is a threatened injury.

Ripeness presents a harder question. Several scenarios could prevent Nwoji from ever submitting to a random, suspicionless drug test, such as an arrest for a new offense resulting in incarceration and probation revocation. As the State argues, Nwoji may later be subject to drug testing for treatment purposes or his probation officer may have reasonable suspicion or probable cause every time Nwoji submits to a test.

8

On the other hand, failure to address this issue now could put Nwoji in a difficult position. He may avoid a random drug or alcohol test by failing to abide by his probation conditions. Alternatively, he may comply with the conditions, and his reward would be a possibly unconstitutional search. Either way, Nwoji must now prepare himself to submit to a search at any time.

In the end, "the question of ripeness turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.' [Citation omitted.]" *Pacific Gas and Elec. v. Energy Resources Comm'n*, 461 U.S. 190, 201, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983). Here, we do not need more facts about a particular search to determine the constitutionality of the statute. See *KNEA*, 305 Kan. at 748 ("A claim is ripe when 'no additional facts need to arise or be developed in the record.' [Citation omitted.]"). At the same time, withholding consideration places a hardship on Nwoji. We find this issue is ripe for decision, and we have jurisdiction.

Turning to the merits, Nwoji argues K.S.A. 2017 Supp. 21-6607(c)(6) is unconstitutional because it requires district courts to subject probationers to "searches that may not be based on reasonable suspicion that the probationer either committed a crime or violated a condition of their probation." A statute's constitutionality is a question of law subject to unlimited review. The appellate courts presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. Courts must interpret a statute in a way that makes it constitutional if any reasonable construction would maintain the Legislature's apparent intent. *State v. Petersen-Beard*, 304 Kan. 192, 194, 377 P.3d 1127, *cert. denied* 137 S. Ct. 226 (2016).

K.S.A. 2017 Supp. 21-6607(c) is a subsection of the statute governing the conditions of probation. That subsection provides,

9

"(c) In addition to any other conditions of probation, suspension of sentence or assignment to a community correctional services program, the court shall order the defendant to comply with each of the following conditions:

. . . .

(5) be subject to searches of the defendant's person, effects, vehicle, residence and property by a court services officer, a community correctional services officer and any other law enforcement officer based on reasonable suspicion of the defendant violating conditions of probation or criminal activity; and

(6) be subject to random, but reasonable, tests for drug and alcohol consumption as ordered by a court services officer or community correctional services officer."

The parties do not contest that probation officers do not need reasonable suspicion to order drug or alcohol testing of probationers under subsection (c)(6). The plain language of the statute supports this conclusion. See *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). The inclusion of a reasonable suspicion requirement in subsection (c)(5) but its exclusion in subsection (c)(6) also supports this conclusion. See *State v. Martin*, 285 Kan. 735, 741-42, 175 P.3d 832 (2008) (applying the doctrine of *expressio unius est exclusio alterius*—including one thing implies excluding another).

K.S.A. 2017 Supp. 21-6607(c)(6) does not specify the manner by which drug and alcohol testing may take place. The district court, though, ordered Nwoji to submit to drug and alcohol testing through breath, blood, or urine tests. A breath, blood, or urine test is a search for Fourth Amendment purposes. See *Ryce*, 303 Kan. at 912.

The Fourth Amendment protects against unreasonable searches and seizures. Section 15 offers the same protections. Whether a search is reasonable depends on the circumstances of the search. *Bennett*, 288 Kan. at 92. A search is generally unreasonable

10

without individualized suspicion, but this is not always the case. *Martinez*, 276 Kan. at 529.

One exception to the individualized suspicion requirement is the government's special needs beyond law enforcement. *Martinez*, 276 Kan. at 529-30. Under this exception, the United States Supreme Court has approved suspicionless drug testing in some circumstances. See *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 664-65, 115 S. Ct. 2386, 132 L. Ed. 2d 564 (1989) (holding suspicionless drug testing of public school student athletes constitutional); *Skinner*, 489 U.S. at 633-34 (upholding suspicionless drug testing of railway employees after a train accident); *Von Raab*, 489 U.S. at 678-79, (upholding suspicionless testing of U.S. Customs employees who carry firearms or interdict illegal drugs). The Kansas Supreme Court has also affirmed the DNA testing of individuals convicted of some crimes as a special need. *Martinez*, 276 Kan. at 534-37.

In analyzing whether a scheme meets a special need, a court first must determine if the scheme's main purpose is something other than uncovering criminal activity. *Martinez*, 276 Kan. at 530, 534. If the scheme meets this threshold determination, the court then performs a balancing test. The court must consider the privacy interest at stake and the degree of the intrusion on that privacy interest. *Board of Ed. of Independent School Dist. No. 92 of Pottawatomie Cty. v. Earls*, 536 U.S. 822, 829, 122 S. Ct. 2559, 153 L. Ed. 2d 735 (2002). The court then weighs these considerations against the government's interests and the efficacy of the scheme in meeting those interests. 536 U.S. at 834.

*Special Need*

The State's responsibility to supervise probationers is a special need that may justify departures from the Fourth Amendment's warrant and probable cause requirements. *Griffin*, 483 U.S. at 873-74. Drug and alcohol testing under K.S.A. 2017

11

Supp. 21-6607(c)(6) is part of a statutory scheme for the supervision of probationers. See *Griffin*, 483 U.S. at 873-74; see also K.S.A. 2017 Supp. 21-6607 generally. In addition, its plain language only authorizes probation officers to order drug and alcohol testing, not law enforcement officers. It therefore likely qualifies as a special need beyond law enforcement.

On the other hand, K.S.A. 2017 Supp. 21-6607(c)(6) does not limit the use of any drug and alcohol testing results. This is relevant because if law enforcement may obtain the results without the consent of the probationer, the testing may no longer qualify as a special need. See *Von Raab*, 489 U.S. at 666. Nothing in the record indicates what may be done with the test results, though the State asserts the results cannot support a new criminal charge.

*Extent of Probationer's Privacy Expectation*

Next, we must consider the extent of probationers' privacy expectations. As the Kansas Supreme Court explained in *Bennett*:

> "[A] person's reasonable expectations of privacy depend on the level of freedom that person enjoys in society. Persons under state control—such as probationers, parolees, and prisoners—exist on a '"continuum" of state-imposed punishments' and thus enjoy more limited privacy than do free citizens. *Samson v. California*, 547 U.S. at 850. The [United States Supreme] Court has found that incarcerated prisoners have no reasonable expectation of privacy and can be searched at any time for any reason. *Hudson v. Palmer*, 468 U.S. 517, 530, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). Parolees have some expectation of privacy, although that expectation is greatly diminished. . . . Probationers have a greater expectation of privacy than parolees but enjoy more limited privacy rights than free citizens. See *Samson*, 547 U.S. at 850; [*United States v. Knights*, 534 U.S. 112, 119, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001)]." 288 Kan. at 92.

The United States Supreme Court has developed some guidelines for determining the extent of probationers' or parolees' privacy expectations. The Supreme Court in *Griffin* held that supervision of probationers was a special need, and a probation officer could search a probationer's home based only on reasonable suspicion without flouting the Fourth Amendment. 483 U.S. at 879-80. In *Knights*, the Supreme Court held law enforcement officers may search a probationer's home based only on reasonable suspicion, using ordinary Fourth Amendment principles instead of applying the special needs exception. 534 U.S. at 121-22. In *Samson*, the Supreme Court upheld suspicionless searches of parolees. 547 U.S. at 857. The United States Supreme Court has yet to address whether suspicionless searches of probationers is reasonable under the Fourth Amendment.

The Kansas Supreme Court has also found that probationers have reduced privacy interests, but the Fourth Amendment still limits the extent of any potential invasion of those rights. In *Bennett*, the Kansas Supreme Court considered whether a probation condition that subjects probationers to random, suspicionless searches violates the probationers' rights under the Fourth Amendment and § 15. Instead of the special needs exception, the court held that this condition was not constitutional using an ordinary Fourth Amendment analysis. 288 Kan. at 98-99.

In reaching its decision, the *Bennett* court noted: "The Kansas Legislature has not authorized suspicionless searches of probationers or parolees." 288 Kan. at 98; see also *State v. Toliver*, 307 Kan. 945, 956-57, 417 P.3d 253 (2018) (finding that "an authorizing state statute [or administrative regulation] presents one way in which a suspicionless search can withstand Fourth Amendment scrutiny"). The court also observed that "parolees in Kansas have an expectation that they will not be subjected to suspicionless searches" based on the procedure of parole supervision at the time of the decision. *Bennett*, 288 Kan. at 98. Because probationers have a greater expectation of privacy than

13

parolees, the court reasoned that probationers could not be subject to suspicionless searches. 288 Kan. at 98-99.

Nwoji argues that K.S.A. 2017 Supp. 21-6607(c)(6) is inconsistent with *Bennett*, but notable changes to Kansas law have taken place since that decision. As the *Bennett* court noted, the Kansas Legislature had not authorized suspicionless searches of probationers or parolees at that time. In 2012, the Kansas Legislature amended K.S.A. 21-6607 to allow for suspicionless drug and alcohol testing of probationers. L. 2012, ch. 70, § 1. The Legislature also amended K.S.A. 22-3717 to authorize suspicionless searches of parolees by parole officers. L. 2012, ch. 70, § 2. The Kansas Supreme Court also recently held that the warrantless, suspicionless search of a parolee's home did not violate the Fourth Amendment. *Toliver*, 307 Kan. at 958-59.

Of course, *Bennett* appears to consider the existence of a statute authorizing suspicionless searches in determining the extent of a probationer's privacy expectations—if probationers know they will be subject to suspicionless searches under a statute, they have fewer privacy expectations. Nwoji, however, is challenging the statute itself, so this factor does not play the same part in the constitutionality analysis. Still, these changes to Kansas law suggest *Bennett* need not control the outcome here. Probationers still have a reduced privacy expectation which may or may not allow for suspicionless searches in some circumstances.

*Extent of Privacy Invasion*

While probationers have reduced privacy rights compared to ordinary citizens, how far the State may infringe on those rights is not unlimited. We must consider the extent of the invasion of privacy caused by the challenged statute. Here, there are no specifics on the drug or alcohol testing a probation officer may order. That said, breath, blood, and urine tests would likely pass constitutional muster.

14

Breath, blood, and urine tests are all searches, but they intrude on an individual's privacy expectations to different degrees. Breath tests are only a slight intrusion on an individual's privacy. *Birchfield v. North Dakota*, 579 U.S. __, 136 S. Ct. 2160, 2184, 195 L. Ed. 2d 560 (2016); *Skinner*, 489 U.S. at 626. "Blood tests are significantly more intrusive" than breath tests. *Birchfield*, 136 S. Ct. at 2184. All the same, the United States Supreme Court has held that if conducted in a reasonable manner, blood tests could be permissible under the special needs exception. *Skinner*, 489 U.S. at 625-26.

Urine tests are not as physically invasive as blood tests. Still, they do intrude on "an excretory function traditionally shielded by great privacy." *Skinner*, 489 U.S. at 626. "[T]he degree of intrusion depends upon the manner in which production of the urine sample is monitored." *Vernonia*, 515 U.S. at 658 (citing *Skinner*, 489 U.S. at 626).

The United States Supreme Court has upheld suspicionless urine tests in part because the person giving the sample did not have to be under direct observation. See, e.g., *Vernonia*, 515 U.S. at 658; *Skinner*, 489 U.S. at 626-27. In those cases, though, the groups subject to testing had not been convicted of any crimes and were not under State control. A probationer would likely have fewer privacy expectations than these groups. Given these fewer privacy expectations, a urine sample produced even under direct observation would not be so significant an intrusion as to render the testing unconstitutional.

Another consideration is that tests such as urine or blood tests can expose other private medical data about someone. *Skinner*, 489 U.S. at 617. K.S.A. 2017 Supp. 21-6607(c)(6), however, authorizes only drug and alcohol testing. The plain language of the statute restricts probation officers to testing for drugs and alcohol, limiting the extent of the privacy invasion. See *State v. Olsen*, 189 Wash. 2d 118, 132-33, 399 P.3d 1141 (2017) (applying commonsense reading to probation condition authorizing urinalysis for

drugs and alcohol and concluding testing limited to presence of drugs and alcohol). But see *State ex rel. Secretary of SRS v. Yarmer*, No. 102,885, 2010 WL 3564748, at *4 (Kan. App. 2010) (unpublished opinion) (finding order for random drug testing in child custody case unconstitutional because it did not limit the use of test results).

*State's Interest*

Finally, we must consider the government's interest in conducting random, suspicionless drug and alcohol testing of probationers. "The primary purpose of probation is the successful rehabilitation of the offender." *State v. Turner*, 257 Kan. 19, 24, 891 P.2d 317 (1995). Probation "provide[s] a program whereby an individual is given the opportunity to rehabilitate himself without institutional confinement under the supervision of a probation official and under the continuing power of the district court to impose institutional punishment for the original offense if the probationer abuses this opportunity." *State v. Dubish*, 236 Kan. 848, 853, 696 P.2d 969 (1985). The State thus has a substantial interest in monitoring probationers to promote their rehabilitation and compliance with probation conditions.

Drug and alcohol testing is a tool for monitoring probationers, but its efficacy relies heavily on being random. Random testing deters probationers from drug and alcohol use because a probation officer could discover this use at any time. It also provides the probation officer with important information to determine whether rehabilitation is taking place. *Olsen*, 189 Wash. 2d at 131. Imposing a reasonable suspicion standard would hurt the efficacy of this testing, because detecting drug and alcohol use simply through observation can be difficult. See *Skinner*, 489 U.S. at 626-28.

The State's reason for random, suspicionless drug and alcohol testing of probationers is the successful rehabilitation of the offender. This significant State interest outweighs a probationer's reduced privacy rights. As a result, drug and alcohol testing

16

under K.S.A. 2017 Supp. 21-6607(c)(6) is constitutional under the Fourth Amendment and § 15.

The State also argues that K.S.A. 2017 Supp. 21-6607(c)(6) is constitutional under the administrative search exception to the Fourth Amendment's individualized suspicion requirement. Because this statute is constitutional as a special need beyond law enforcement, we need not address the merits of this argument. The State also has cited no authority that the administration of a probation system would qualify for this exception.

*Abuse of Discretion*

Nwoji also argues the district court abused its discretion in imposing the condition that he submit to random drug and alcohol testing at least once every 30 days.

Here, the district court arguably erred in finding reasonable suspicion supported random drug and alcohol testing as a probation condition. In finding reasonable suspicion, the court relied on Nwoji's criminal history and prior drug use. While a court may consider these factors in determining if reasonable suspicion exists, there must still be some particularized knowledge relevant to the context of the search or seizure. *State v. Evans*, No. 116,022, 2017 WL 544565, at *4 (Kan. App. 2016) (unpublished opinion); *State v. Rodenbeek*, No. 93,282, 2006 WL 903145, at *4 (Kan. App. 2006) (unpublished opinion).

Nevertheless, we may still uphold the district court as right for the wrong reason. *Phillips*, 299 Kan. at 493. A district court generally has broad discretion in imposing probation conditions. *Bennett*, 288 Kan. at 91; see K.S.A. 2017 Supp. 21-6607. But probation conditions that restrict constitutional rights must bear a reasonable relationship to the rehabilitative goals of probation, the protection of the public, and the nature of the

17

offense. See *State v. Evans*, 14 Kan. App. 2d 591, 592, 796 P.2d 178 (1990). Whether a condition of probation is constitutional is a question of law subject to unlimited review. *Bennett*, 288 Kan. at 91.

In *State v. Gordon*, No. 94,477, 2006 WL 1379689, at *3 (Kan. App. 2006) (unpublished opinion), the court found that the district court did not abuse its discretion in imposing drug and alcohol testing as a probation condition for a defendant convicted of burglary:

> "The use of controlled substances is illegal, and the State has an interest in ensuring that those placed on probation are not engaged in illegal behavior. While the use of alcohol is not illegal once one reaches the legal age of consumption, alcohol abuse is a factor that is directly related to the possibility of engaging in future criminal behavior. The State's interest in regulating alcohol abuse when one is under the supervision of community corrections falls within the broad powers of the court in determining conditions of probation."

As with *Gordon*, the probation condition here "bear[s] a reasonable relationship to the rehabilitative goals of probation, the protection of the public, and the nature of the offense." See 2006 WL 1379689, at *2. The district court did not abuse its discretion in imposing this condition.

Affirmed.